# Exhibit A

## SUBZ ZERO
## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

THIS AGREEMENT has been entered this 5 of August, 2013. It is by and between, SUB ZERO FRANCHISING, INC., a Utah corporation, ("we, us") and ___FRANK NYE___, an individual and ___ALISON NYE___, an individual (jointly and severally "you").

We own proprietary ideas and other confidential information related to the ownership and operation of "**Sub Zero**" businesses that feature the sale to the public of ice cream and dessert products and services under the Sub Zero® marks, programs and systems (The "Franchise System"). Through rigorous testing and training, we have developed a unique and uniform concept of service and marketing. We have certain rights to and intend to continue to develop products, services, valuable goodwill, expertise, proprietary ideas, confidential information, service marks, methods, procedures, recipes, techniques, guidelines, and materials connected with the operation, promotion, and advertising of our Sub Zero® outlets (collectively these are called the "Method of Operation").

You and we, and our authorized representatives Frank and Allison Nye and other associated with them, desire to discuss the offer and sale of a Sub Zero® franchise and potentially to enter into related commercial relationships. In the course of these discussions and our relationship it will be necessary for us and our representatives to disclose Confidential Information to you.

You have read this Agreement. You understand and accept the terms, conditions and covenants contained in this Agreement. They are necessary to protect and preserve the goodwill of the Sub Zero® marks and the confidentiality and value of the Method of Operation.

THEREFORE, in consideration of the following mutual promises and covenants, the parties agree as follows:

1     **PROTECTION OF CONFIDENTIALITY**

1.1     **Confidential Information Defined**. In this Agreement, "Confidential Information" shall mean:
   a) Any information that relates to our proprietary ideas, trade secrets, business, products, recipes, technology, customers, finances, plans, proposals, or practices of us or the Franchise System, including, but not limited to, plans and specifications for new products, discoveries, ideas, know-how, research and development, inventions, techniques, marketing strategies, customer lists, financing sources and suppliers, non-public financial information, budgets, data, and projections;
   b) Our proprietary information and information we or our representatives mark or designate as confidential;
   c) Information, whether or not in written form and whether or not designated as confidential, which is known to you as being treated by us as confidential;
   d) Information provided to us by third parties, which we are obligated to keep confidential.

The Confidential Information shall include information in any form in which such information exists, whether oral, written, film, tape, computer disk, digital, or other form of media.

1.2     **Our Exclusive Property**. You acknowledge and agree that our Method of Operation and all Confidential Information is and shall continue to be our sole and exclusive property, whether or not disclosed or entrusted to you in connection with your relationship with us. Nothing in this Agreement will give you or others any right, title, or interest whatsoever in or to them. The Confidential Information shall be considered our trade secrets and shall be entitled to all protections provided by applicable law to trade secrets.

1.3     **Safeguard of Confidential Information**. You agree to exercise the highest degree of care in safeguarding Confidential Information against loss, theft, or other inadvertent disclosure. You agree to accord to the Confidential Information the same degree of care and use the same confidentiality protection practices as you exercise or employ with respect to your confidential or proprietary information. This includes obligating employees and consultants who receive Confidential Information to covenants of confidentiality and non-use.

1.4     **Notice**. You agree that if you or your employees and agents are served with any subpoena or other compulsory judicial or administrative process calling for production of Confidential Information, you will immediately notify us in order that we may take such action as we deem necessary to protect our interests. You agree to execute any and all documents and to do all acts and things in the opinion of our counsel are necessary or advisable to protect our interests.

2.      **COVENANT OF NON-DISCLOSURE** You specifically acknowledge that you will receive valuable and specialized Confidential Information, including information regarding our operational, sales, promotional and marketing methods and techniques and the Method of Operation. You agree not to disclose Confidential Information to any third party and to limit disclosure within your association to designated employees approved by us. Disclosures to designated employees will be done on a "need to know" basis to the extent necessary for them to perform the duties of their employment with you. Unless required by court order or applicable law, you agree not to copy, download, send, or divulge any Confidential Information directly or indirectly to any other person or enterprise outside of our system. You will never communicate, divulge, or use in any manner, either for your benefit or the benefit or any other person, persons, partnerships, associations, companies or corporations any Confidential Information or proprietary information, knowledge or know-how concerning the Method of Operation or any information we have communicated to you in written, verbal or electronic form, including intranet passwords, for the operation of your business.

3       **COVENANT OF NON-USE** You agree not to use Confidential Information or the Method of Operation, except as authorized by us. You will obligate your owners, board of directors, your employees, and your agents to the same non-use covenant. We must approve in writing any use of Confidential Information or Method of Operation by you or your owners or your directors or employees.

4       **RETURN OF CONFIDENTIAL INFORMATION**. You agree that all originals and copies of records, data, reports, documents, lists, plans, drawings, correspondence, memoranda, notes, and other materials related to or containing any Confidential Information, in whatever form they exist, whether written, film, tape, computer disk, or other form of media, shall be our sole and exclusive property. Upon request by us, you will promptly return to us or our designated representatives all documents or other tangible property that contains Confidential Information.

5       **REMEDIES: INJUNCTION AND DAMAGES**. You acknowledge that any disclosure of Confidential Information will cause irreparable harm to us and the Franchise System. You agree that it may be difficult to measure damage to us or the Franchise System from any breach by you or your employees and agents of this Agreement. You agree that monetary damages may be an inadequate remedy for any such breach. Accordingly, you agree that if you breach or take steps preliminary to breaching this Agreement, we shall be entitled, in addition to all other remedies we may have at law or in equity, to a restraining order, temporary and permanent injunctive relief, specific performance, or other appropriate equitable relief, without showing or proving that we actual sustained any damage.

6       **MISCELLANEOUS**
    6.1     **Duration**. The obligations set forth in this Agreement will continue during and beyond the term of your relationship with us and for as long as you possess Confidential Information.

    6.2     **Waiver**. A waiver of any breach of any provision, term, covenant, or condition of this Agreement will not be a waiver of any subsequent breach of the same or any other provision, term, covenant, or condition. Any waiver to this Agreement's provisions must be made in signed writing by the granting party.

6.3   **Construction**.   This document is the entire agreement between the parties. It supersedes all prior or contemporaneous written and oral agreements or understandings with respect to the subject matter of this Agreement. It may not be modified or amended except by signed written agreement. This Agreement benefits and binds the respective heirs, executors, administrators, successors, and assigns of the parties.

6.4   **Enforcement**.   If a dispute arises between the parties, the parties agree to participate in at least 6 hours of mediation in accordance with the Mediation Procedures of the US Arbitration & Mediation Service or of any similar organization that specializes in the mediation of commercial business disputes. The parties agree to equally share the costs of mediation. This Agreement is accepted by us in the State of Utah and will be governed by the substantive laws of **Utah** without regard to Utah choice of law provisions. Utah laws will prevail, except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. Sections 1051, et seq.). All issues or disagreements relating to this Agreement will be mediated, arbitrated, tried, heard, and decided in **Utah County, Utah**, which you agree is the most convenient venue.

The prevailing party (the party who recovers the greater relief) in any arbitration, insolvency proceeding, bankruptcy proceeding, suit, or action to enforce this Agreement will recover its arbitration, proceeding, and court costs and reasonable attorney fees. These will be set by the arbitration, proceeding, or court, including costs and attorney fees on appeal or review from the arbitration, proceeding, suit, or action.

6.5   **Acknowledgments**.   No person has made any other representation that is not expressly set forth in this Agreement to induce you to accept and execute this Agreement. You recognize that the business venture contemplated by this Agreement involves business risks. We expressly disclaim the making of, and you acknowledge that you have not received, any representation, warranty, or guarantee, express or implied, concerning the potential revenues, cost savings, volume, profits, or success of the business venture contemplated by this Agreement.

7   **SIGNATURES**   IN WITNESS, the parties have executed this Agreement on the date written above.

("we/us"): **SUB ZERO FRANCHISING, INC.**

By: _____
Name: _____
Title: _____

("you"): _____[signature]_____ and _____[signature]_____

By: _____
Name: _____

By: _____
Name: _____