# EXHIBIT F

Case 2:15-cv-00821-BSJ   Document 36-6   Filed 03/29/17   Page 1 of 4

# KIRTON | McCONKIE

Michael F. Krieger
mkrieger@kmclaw.com
801.321.4814

May 19, 2016

**Via Email**
**Confirmation via Certified Mail**

Ryan Goudelocke
Durio, McGoffin, Stagg & Ackermann
P.O. Box 51308
Lafayette, LA 70505
ryan@dmsfirm.com; katie@dmsfirm.com

Re:   **Sub Zero Franchising, Inc. and Kenneth Bobbs and affiliated entities**
      Our File: 25378.3

Dear Mr. Goudelocke:

We understand that you represent Mr. Kenneth B. Bobbs, Jr., and as such we are directing this letter to you. In the event you do not represent Mr. Bobbs with respect to the subject matter of this letter, please inform us accordingly.

We represent Sub Zero Franchising, Inc. ("Sub Zero") in its intellectual property and litigation matters. Sub Zero has partnered with Sub-Nitro, LLC and Rob Kennedy of NitroCream, LLC, all of whom we also represent, to pool their intellectual property related to making ice cream using liquid gasses such as liquid nitrogen. Through this partnership, Sub-Nitro owns and licenses United States Patent No. 8,679,566 (titled "Method of Making Frozen Confections") and United States Patent No. 7,455,868 (titled "Apparatus and Method for Making Ice Cream Products"). Both patents cover methods for making ice cream products using liquid gases such as liquid nitrogen.

It is our understanding that Sub Zero has entered into several agreements with Mr. Bobbs, including four Franchise Agreements and an Area Developer Agreement (as amended), all executed on or about October 31. 2013. Pursuant to those agreements, Mr. Bobbs became a franchisee and an independent area developer franchise sales and service agent of Sub Zero. It is our understanding that you have been in communication with Brad Smith, Sub Zero's franchising attorney regarding mutually alleged breaches of the agreements between the parties. We have been asked to continue discussions with you in that regard.

We first wish to assure you that it remains Sub Zero's desire to resolve these matters amicably. We are in the process of preparing a formal response and proposal for your consideration, and will have that to you shortly. Based on the parties' communications to date, it

appears that the parties are in general agreement that it will be in the best interest of the parties for Sub Zero to discontinue its franchisee/area developer relationship with Bobbs and/or his affiliated entities.

In the meantime, and as the parties determine how they will handle winding down their relationship, we wish to address in brief your position that Sub Zero has not complied with its obligations with respect to the forwarding of leads within the geographic area Mr. Bobbs has overseen under the Area Developer. Sub Zero has never withheld any qualified leads from Mr. Bobbs, and has a practice of qualifying leads to ensure that it does not waste its area developers' time by forwarding unqualified leads. Thus, to whatever extent Sub Zero has at times worked to develop leads within the geographic area assigned to Mr. Bobbs, it has always been Sub Zero's practice to forward leads to Mr. Bobbs and its other area developers after qualifying such leads. It has also been Sub Zero's intent to ensure that Mr. Bobbs or his affiliated entities, as appropriate, were compensated for the conversion of all leads regardless of whether they first contacted Sub Zero directly or first contacted or were contacted by Mr. Bobbs.

Be that as it may, as the parties work to resolve their differences, we have been asked to confirm with you how you would like to handle any current leads that may come to the attention of our client. It is our understanding that in the past few weeks you had discussed and agreed with Mr. Smith that it made sense to have Sub Zero handle all leads moving forward. That said, if Mr. Smith's understanding of what was agreed to does not comport with your own, our client is willing to forward qualified leads to you/Mr. Bobbs on the understanding that Mr. Bobbs will strive in good faith to comply with his obligations under the Area Developer Agreement with respect to such leads until such time as the parties agree otherwise. Alternatively, our client is willing to notify you/Mr. Bobbs of the leads and to seek to develop those leads itself, on the understanding that Mr. Bobbs individually or through his affiliated entity(ies) will be compensated for the conversion of any leads under the terms of the Area Developer Agreement until the parties agree otherwise. Let us know whether either of these proposals is acceptable or if there is some variation you would like to propose for consideration.

In relation to the new partnership between Sub Zero and Sub-Nitro, we have also been asked to notify you that operation of a store making and selling ice cream products using liquid gases such as liquid nitrogen in the absence of authorization from our clients risks infringement of one or more of our clients' patents identified above. We are given to understand that the planned Professor Bob Beans Coffee Bar & Nitrogen Ice Cream Lab intends to use machines to mix its ice cream. We are further given to understand that representations have been made by or on behalf of Mr. Bobbs that such machines have been or will be purchased from Mr. Kennedy or his company NitroCream. We have conferred with Mr. Kennedy, who is unaware of any orders having been placed for his machines for use in the new business.

Ryan Goudelocke
May 19, 2016
Page 3 of 3

---

      I look forward to hearing from you and working together to resolve this matter. Please let me know if you have any questions or need any further information.

                                      Cordially,
                                      KIRTON & McCONKIE

                                      Michael F. Krieger

CONFIDENTIAL INFORMATION                SZ_003971